(241 P.3d 161)
No. 103,047

In the Matter of the Estate of HELEN M. HEIMAN, Deceased.

Opinion filed October 15, 2010.

*Jason E. Brinegar*, of Galloway, Wiegers & Brinegar, P.A., of Marysville, for appellant Carol L. Heiman.

*William C. O'Keefe*, of Seneca, for appellee Maurice Heiman.

Before MALONE, P.J., HILL and ATCHESON, JJ.

ATCHESON, J.: Thirty years ago, Helen M. Heiman sold a piece of land to her son Maurice Heiman on an installment contract. Maurice made some payments. Helen died about 3 years ago. Carol Leo Heiman, another son, is the executor of his mother's estate and, in that capacity, filed a petition as part of the probate pro-

ceeding in Nemaha County to recover the balance due from Maurice on the land sale. Everybody seems to agree Maurice still owes some money. They part ways over how much. But that issue—the substantive disagreement between the Estate and Maurice about money—is not before us. It remains unaddressed and unresolved. Instead, the parties have been mired in an entirely needless dispute over "jurisdiction." At Maurice's request, the district court dismissed the probate petition on the notion the court lacked subject matter jurisdiction because the action should have been brought as a civil suit under Chapter 60 rather than in the probate proceeding under Chapter 59. On behalf of the Estate, Carol has appealed the dismissal. We decide the propriety of that ruling today. We reverse and remand with directions that the action be reinstated and Carol be given leave to file an amended petition restyling the pleading as one under Chapter 60.

This legal dispute has been sucked into a procedural vortex because the parties argued outdated case authority to the district judge and failed to appreciate the sweeping changes court unification made to the Kansas judicial system, particularly with respect to jurisdiction. In short, unification provided the district courts with broad jurisdictional authority to hear all types of cases and eliminated the strict jurisdictional barriers that channeled probate matters into specialized probate courts with exclusive jurisdiction to decide those cases. Since unification, district courts have had the jurisdiction to hear both Chapter 60 civil cases and Chapter 59 probate matters. The district court, therefore, had no reason or legal basis to dismiss the Estate's action against Maurice for lack of jurisdiction.

We discuss in some detail the impact court unification has had on jurisdiction of the district courts. Because we are remanding this case for further proceedings, we also discuss several other procedural issues that have already divided the parties. We wish to make clear, however, that we express *no* views on the substantive legal dispute in this case. We could not, even if we were disposed to. The record is so meager—the parties effectively have not gotten beyond the pleading stage—the facts remain wholly undeveloped.

What we have already said adequately sets out the factual dimensions of the issue for purposes of this opinion.

Because there are no material factual disputes bearing on the district court's decision to dismiss and jurisdiction typically presents a question of law, our review is plenary. *Harsch v. Miller*, 288 Kan. 280, 286, 200 P.3d 467 (2009); *Rivera v. Cimarron Dairy*, 267 Kan. 865, 868, 988 P.2d 235 (1999). That is, we owe no particular deference to the ruling below, and we may examine the issue anew.

The issue the parties have given us turns on the scope of a district court's subject matter jurisdiction. Subject matter jurisdiction defines the legal authority of a particular court to hear a type of case or dispute. *Padron v. Lopez*, 289 Kan. 1089, 1106, 220 P.3d 345 (2009) ("Subject matter jurisdiction . . . establishes the court's authority to hear and decide a particular type of action. [Citations omitted.]"). Federal courts, for example, have distinctly limited jurisdiction; they cannot hear common-law tort or contract actions unless the plaintiff and defendant are citizens of different states and the amount at issue exceeds $75,000. 28 U.S.C. § 1332(a) (2006). A court must have subject matter jurisdiction as a prerequisite to entering a valid judgment. If a court lacks subject matter jurisdiction, its actions have no legal force or effect and cannot bind the parties. See, *e.g., American Fiber v. Tyco Healthcare*, 362 F.3d 136, 138-39, 142-43 (1st Cir. 2004) (Noting that "in the absence of jurisdiction, a court is powerless to act," the appellate court voids a judgment even though the losing party first asserted a lack of subject matter jurisdiction on appeal.). By the same token, the parties may not, by agreement, confer subject matter jurisdiction on a court. And a court is obligated to raise and address an apparent lack of subject matter jurisdiction even if the parties have not. *Rivera*, 267 Kan. at 868.

In Kansas, the district courts "have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law." K.S.A. 20-301. That includes subject matter jurisdiction over probate proceedings. *Quinlan v. Leech*, 5 Kan. App. 2d 706, 710, 623 P.2d 1365 (1981) ("Since court unification, then, a district court has subject matter jurisdiction of probate proceedings."). As

part of the court unification process, the legislature abolished probate courts as a forum distinct and separate from district courts. K.S.A. 20-335.

In 1977, court unification dramatically reconfigured the judicial system in Kansas. At the trial level, various courts with specialized jurisdictions were eliminated and their functions were transferred to district judges. The district courts became courts of general jurisdiction. They could hear civil and criminal cases, probate actions, and juvenile proceedings. That marked a major change in the way the judicial system worked, and most participants in the process hailed unification as a distinct improvement.

Before unification, Kansas used a variety of specialized courts, including probate courts, county courts, juvenile courts, and courts of common pleas. They operated separately from the district courts. Those specialized courts had defined—and limited—jurisdictional spheres. For example, the probate courts had exclusive jurisdiction to hear probate matters. No other courts could entertain or decide probate issues or disputes. In legal terminology, the other courts, including the district courts, lacked subject matter jurisdiction over probate matters. Conversely, a probate court had no jurisdiction to decide a criminal case or a juvenile matter. To further confound lawyers and other participants in the process, the configuration of the specialized courts varied from county to county. See generally Report of the Kansas Judicial Study Advisory Committee, pp. 24-26 (May 1974).

One of the primary goals of court unification was the elimination of "jurisdictional fragmentation." Advisory Committee Report, p. 24. As enacted by the legislature, the court unification plan accomplished that purpose by consolidating subject matter jurisdiction in the district courts. Thus, following unification, the district courts began hearing probate matters, juvenile proceedings, and other actions previously entrusted to the specialized courts. Those specialized courts were gone, along with the rigid jurisdiction boundaries that marked their judicial territories.

The principal implication of unification for this case lies in the broad, general jurisdiction the district courts have enjoyed since 1977. As we have said, they now hear Chapter 60 civil actions and

Chapter 59 probate matters. Unification also meant that pre-1977 case law discussing or relying on the jurisdictional limitations imposed on the specialized courts and the district courts no longer had any relevance or application. On that legal point, those cases are relics of a bygone era. See *Ram Co. v. Estate of Kobbeman*, 236 Kan. 751, 764, 696 P.2d 936 (1985) (court distinguishes pre-unification probate cases in addressing whether a Chapter 60 action against the executor of an estate legally exhibits a demand against the estate). Their discussion of subject matter jurisdiction and limitations on the authority of trial courts to decide particular types of cases has no precedential weight or value in examining those issues under the State's current judicial system.

Before the district court and here on appeal, the parties, however, do battle as if court unification never happened. They parry over case authority addressing pre-unification jurisdiction of probate courts. Those cases provide no guidance on the jurisdiction of modern district courts, and they fail to inform either the trial judge or us in any constructive way. For example, Maurice cites *Hildenbrand v. Brand*, 183 Kan. 414, 416, 327 P.2d 887 (1958), for the proposition that a probate court has jurisdiction to hear a claim against an estate, but an executor must go to district court to file an action to assert a claim on behalf of the estate. He offers a string cite of four other pre-unification cases he says stand for the same proposition. In turn, Maurice argues that Carol's efforts to collect the balance due on the land contract were jurisdictionally improper in the "probate" court. The argument might have had merit before court unification, but not now. The district court has subject matter jurisdiction to hear Carol's action, whether it is a probate proceeding under Chapter 59 or a civil action under Chapter 60. Accordingly, the action should not have been dismissed for lack of jurisdiction.

We do not especially fault the trial judge here. In any litigation, the parties essentially define the controversy in their moving papers and responses. The adversarial process presumes those competing disquisitions generally draw on a viable body of law, rather than extinct species. That did not happen here, and the trial judge went

ahead to decide the issue presented to him, even though it was, in effect, a phony one.

What remains is the proper solution for the erroneous dismissal of Carol's action for lack of jurisdiction. We need to send the case back to the district court. And the district court should reinstate the action against Maurice. That much is plain. Carol styled the petition as one brought under Chapter 59. But the district court correctly noted that in K.S.A. 59-103, the Probate Code limits what may be decided using the procedures outlined in Chapter 59. A suit by an executor or administrator to secure or collect an obligation owed the decedent at the time of his or her death is not among them. Such a proceeding typically should be brought as a civil action under Chapter 60. Here, the claim would be on the sales contract.

In effect, Carol miscaptioned the action as one under Chapter 59, rather than one under Chapter 60. The petition references neither chapter. It does, however, bear the caption of the probate proceeding and is verified, as required under K.S.A. 59-2201. (There is no verification requirement for most papers filed under Chapter 60.) Thus, the format suggests a Chapter 59 action, although the claim asserted and the relief sought—recovery of money from Maurice on the contract—outline a Chapter 60 action. But that is not a valid basis to dismiss for lack of jurisdiction because, as we have said, the same district court has subject matter jurisdiction to hear proceedings under either Chapter. Instead, Carol should have been allowed to amend his petition as one captioned for Chapter 60. That would have been fully consistent with established procedure. First, the courts should treat petitions, motions, or other papers for what they are based on their substance rather than on how they are captioned or titled. *Ireland v. Byrne*, No. 101,739 unpublished opinion filed January 22, 2010, slip op. at 7-8; *Smith v. State*, 22 Kan. App. 2d 922, 925, 924 P.2d 662 (1996) ("We can think of no good reason for concluding that the caption of a pleading should control over its content."). Second, the Kansas Code of Civil Procedure contemplates that filings should be construed to effect their purpose, not in technical ways that thwart an airing of the parties' underlying legal dispute. See

K.S.A. 60-102 (The code "shall be liberally construed and administered to secure the just, speedy and inexpensive determination of every action or proceeding."); K.S.A. 60-208(f) ("All pleadings shall be so construed as to do substantial justice."); K.S.A. 60-215(a) ("leave [to amend] shall be freely given when justice so requires").

Consistent with those precepts, we held in *Hole-in-One, Inc. v. Kansas Industrial Land Corp.*, 22 Kan. App. 2d 197, 200, 913 P.2d 1225, *rev. denied* 260 Kan. 993 (1996), that designating what was actually a Chapter 60 action as a limited action brought under Chapter 61 did not render the action "void." The court recognized the deficiency could be corrected by amendment and noted that the appellate courts regularly allow parties to amend pleadings to cure comparable defects, such as the absence of a verification or a misnomer. 22 Kan. App. 2d at 201. The court also pointed out that following court unification, district courts had jurisdiction over both Chapter 60 and Chapter 61 actions and the chapter designations helped the clerk's office differentiate the types of cases being filed. The result here should be no different.

Simply because Carol had captioned the action as one brought under Chapter 59 and had identified it as being a probate proceeding, the district court should not have dismissed. Rather, the district court should have treated it as a Chapter 60 action on the land contract and should have allowed Carol to revise the form and language of the petition indicating otherwise. No judgment should have been entered against Carol, and no appeal to this court should have been necessary.

As we noted earlier, in the *Quinlan* decision, this court correctly described the impact of court unification as affording district courts subject matter jurisdiction over probate proceedings. *Quinlan*, 5 Kan. App. 2d at 709. We pause here to further note that the specific holding in *Quinlan* does not conflict with the result we reach in this case. In that case, the estate of J. E. Quinlan was being handled in the Jefferson County courts when a relative of Quinlan filed a Chapter 60 action in Shawnee County alleging the executor of the estate had breached his fiduciary duties. The Shawnee County district judge dismissed the suit for lack of subject matter jurisdiction, but apparently did so because the witnesses and records pertinent

to the alleged breach were, for the most part, in Jefferson County. 5 Kan. App. 2d at 709-10. This court affirmed the dismissal. This court, however, recognized that district courts have subject matter jurisdiction to hear both probate matters and Chapter 60 civil actions and specifically rejected the district judge's reliance on pre-unification cases in coming to the opposite conclusion. 5 Kan. App. 2d at 710-11. The dismissal was not affirmed based on lack of subject matter jurisdiction, but on deference to Jefferson County as a more appropriate forum for the breach of fiduciary duty suit. 5 Kan. App. 2d at 711. We think the better course in *Quinlan* might have been to transfer the breach of fiduciary duty case from Shawnee County to Jefferson County as a matter of venue for the convenience of the parties and witnesses and in the interests of justice, as allowed by K.S.A. 60-609. In a concurring opinion, then-Judge Abbott made that same observation. 5 Kan. App. 2d at 711.

Before turning to two other issues suggested in the briefing, we wish to make clear that we are dealing only with jurisdiction—the authority of a court to hear a dispute—and how court unification expanded the district court as a forum. Court unification did not change the substantive law of probate. And pre-unification cases may well provide valid precedent on specific probate issues.

In his briefing, Maurice at least implies that he should be entitled to a jury trial in an action brought under Chapter 60. That implication (if we are correctly reading his brief) is inaccurate. There is no automatic right to a jury simply because a petition has been filed under Chapter 60. The right to a jury trial in a civil case usually depends upon the relief a plaintiff seeks unless a statute specifically permits a jury trial, see, *e.g.*, K.S.A. 26-509 (jury trial in condemnation); K.S.A. 59-2960 (jury trial in care-and-treatment proceeding). If a plaintiff asserts a common-law right or remedy, such as money damages on a breach of contract, he or she is entitled to a jury. *Waggener v. Seever Systems, Inc.*, 233 Kan. 517, 523, 664 P.2d 813 (1983) (Money damages reflect a common-law remedy for breach of contract and, therefore, permit a jury trial under Kan. Const. Bill of Rights § 5.); see also PIK Civ. 4th 124.01-A (jury called upon to decide case when plaintiff seeks damages for breach of contract). If the relief sought is equitable, however,

the plaintiff has no right to have a jury hear his or her claim. *Waggener*, 233 Kan. at 523 (Rescission is an equitable, rather than a common-law, remedy and, therefore, does not require a jury trial.).

As drafted, Carol's petition seeks the amount due and unpaid on the contract. But the parties seem to contemplate an alternative remedy of setoff in which any inheritance due Maurice would be reduced by the amount he still owes on the contract. Setoff is an equitable remedy. *Mynatt v. Collis*, 274 Kan. 850, 852, Syl. ¶ 14, 57 P.3d 513 (2002) (A party may seek setoff "through a proceeding in equity."); *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 200, 235 P.3d 515 (2010) (characterizing setoff as an equitable remedy). Carol could request alternative remedies in his petition in the form of the amount due or setoff. He likely would have to elect one or the other before trial and certainly before a judgment might be entered. See *Nordstrom v. Miller*, 227 Kan. 59, Syl. ¶ 11, 605 P.2d 545 (1980) (noting a party suing for money damages on a contract and for rescission of the contract must elect between the two because they are inconsistent).

The parties also discuss in their briefing statute of limitations issues that might arise. We offer no opinion on the propriety of the defense in this case. Without a developed factual record regarding the payments Maurice says he made and when the payments stopped, we could only speculate. Maurice, however, suggests Carol could not seek setoff absent the assertion of a valid limitations defense. Maurice cites *In re Estate of Wernet*, 226 Kan. 97, Syl. ¶¶ 7, 8, 596 P.2d 137 (1979), in support of that suggestion. We do not read *Wernet* as saying an executor or administrator of a probate estate can seek a setoff *only* in the face of a statute of limitations defense. The Kansas Supreme Court recognized setoff could be allowed in that circumstance assuming a district court found equity and fairness required that result. The court states: "[T]he statute [of limitations] is not a bar to a setoff to the extent of appellant's distributive share." 226 Kan. at 108. The language of the opinion, however, does not confine setoff to those facts. And *Holden v. Spier*, 65 Kan. 412, 414-15, 70 P. 348 (1902), on which the *Wernet* court relies heavily, seems to hold setoff may be applied substantially more broadly than Maurice argues. We do not inti-

mate how the district court ought to treat a request for setoff in this case, since Carol's petition does not assert such a remedy. Nor has the case progressed far enough for the district court to have an evidentiary record from which it might weigh the equitable considerations for and against setoff.

We reverse and remand so that the district court and the parties may proceed with Carol's petition under Chapter 60. Carol should be allowed to restyle the petition as one under Chapter 60 and to otherwise amend his pleading consistent with the liberal rule of K.S.A. 60-215. Maurice, of course, should then answer, asserting any affirmative defenses he considers appropriate, as provided in K.S.A. 60-208(c).

Reversed and remanded.